IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER L. GONZALES,

          Petitioner,

    v.

SUSAN WASHBURN,

        Respondent.

Case No. 2:19-cv-00733-HZ

OPINION AND ORDER

Stephen R. Sady
Chief Deputy Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Marion County convictions dated June 7, 2012. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## BACKGROUND

Petitioner and the victim in this case, RH, met on a social networking site. After corresponding online, they agreed to meet in person. That meeting, as detailed by the Umatilla County Circuit Court during Petitioner's post-conviction relief ("PCR") proceedings, gave rise to the convictions Petitioner now challenges:

> Petitioner arranged to meet the victim at her apartment, but she did not answer the door when he arrived because she was afraid. On another occasion, petitioner agreed to pick up the victim at her apartment in his car to take her to the mall. When he arrived, the victim was not ready, but she let him into her apartment. She was wearing underwear and a bra, as well as a towel on her head and another wrapped around her body. She went into her bathroom to finish getting dressed; petitioner walked around her apartment and then sat on her bed in her bedroom. The victim thought that was strange because there were chairs in her living room and in her kitchen.

> When she came out of the bathroom, petitioner told the victim to sit down and to relax. Petitioner put his arm around her and gave her a hug, and then kissed her, and the victim kissed him back. Petitioner was stronger than she was and she could not move much. She did not mind his kissing her. Petitioner, however, then pulled down his

pants and wanted her to give him a "hand job." It shocked her, and she told him that she did not want to do that. Petitioner told her that she "wanted to." He continued to tell her that she "wanted to" over her objections. The victim was afraid because she barely knew him and she did not know why he had done that.

Petitioner wanted her to give him oral sex, and he "shoved" his penis into her mouth without asking her. His penis was too large to fit completely into her mouth but he tried to do it anyway, making her gag. Even though she struggled and his penis was making her gag, he did not stop. The victim tried to push him away and make him stop, but she was afraid to fight harder.

Petitioner then removed the victim's clothing. She tried to stop him, but petitioner was stronger than she was. When petitioner got on top of her to have sexual intercourse with her, she told him, "no." Petitioner, however, continued to tell her that she "wanted it." The victim tried to fight, but she was afraid to fight harder because she was afraid he would hurt her physically. She was afraid to scream because she was afraid of making him angry and that he would hurt her. When he was finished, petitioner went to the bathroom, took her phone, and left. The victim went to a pay phone and called the police. The police took her to the hospital, where they found petitioner's semen in her vagina.

Petitioner told the police that the victim kissed him and rubbed his penis area over his jeans, and he denied having sexual contact or intercourse with the victim. He asserted that the victim claimed that he raped her because she thought he had taken her cell phone. After consulting with his attorney petitioner chose not to testify, primarily because he had a prior felony conviction for failing to register as a sex

> offender. The sex offender registration requirement arose from an incident adjudicated in the juvenile system. While in the [Oregon Youth Authority], Petitioner was treated by Thomas Bendt who continued to see Petitioner on an informal basis after Petitioner was released from OYA. After the incident with the victim, Petitioner visited with Bendt and told him that the sex with the victim was consensual.

Respondent's Exhibit 130, pp. 1-2.

Petitioner proceeded to a jury trial on charges of Sodomy in the First Degree, Rape in the First Degree, and Sexual Abuse in the Second Degree. At the close of the State's case, defense counsel moved for a judgment of acquittal as to the Sodomy and Rape charges. Counsel argued that the State failed to prove that Petitioner forcibly compelled RH into sexual activity, relying on RH's testimony that: (1) Petitioner was stronger than she was, and she feared he would hurt her if she did not comply with his demands; and (2) although RH told Petitioner "no," the evidence failed to show that RH "really resisted in any way" or that Petitioner would have known that he was subjecting RH to forcible compulsion. Trial Transcript, pp. 161-62. 169-70. After reviewing the relevant state law regarding the issue of forcible compulsion, the trial judge denied the motion:

> In this particular case, in looking at the evidence most favorable from the State's perspective, I look at the testimony of [RH]. Her testimony was, with respect to the Sodomy charge, that he shoved it in my mouth, it made me gag. It's my opinion, taking the evidence most favorable to the State, that that testimony could be relied upon [by] the jury as physical force and to lead to a conclusion of forcible compulsion.

So as to the Sodomy in the First Degree
charge, I will deny the motion for judgment
of acquittal and I think the jury also could
conclude that when her testimony is that the
defendant knowingly shoved it, meaning his
penis, in her mouth, could conclude that
that would be knowingly on his part, subject
her to forcible compulsion. With respect to
the Rape charge, the testimony from the
victim was that he took her clothes off, she
tried to stop but he was too strong. Again,
taking the evidence in the light most
favorable to the State, I think that a jury
could conclude that that satisfies the
element of forcible compulsion and that his
acts of taking off her clothes and she tried
to stop him, could be interpreted to the
jury as sufficient physical force.
Therefore, after reviewing the cases and
reviewing my notes, I'm denying the motions
for judgment of acquittal. . . .

*Id* at 171-72. A unanimous jury ultimately found Petitioner
guilty of all charges, and the trial court sentenced him to 200
months in prison.

Petitioner took a direct appeal where he argued that the
trial judge erred when he denied the motion for judgment of
acquittal. Respondent's Exhibit 112. The Oregon Court of Appeals
affirmed the trial court's decision without issuing a written
opinion, and the Oregon Supreme Court denied review. *State v.
Gonzales,* 264 Or. App. 320, 331 P.3d 1109, *rev. denied,* 356 Or.
517, 340 P.3d 48 (2014).

Petitioner next filed for post-conviction relief in
Umatilla County where he alleged, in relevant part, that trial
counsel was ineffective for failing to: (1) contact and
potentially call mental health counselor Thomas Bendt as a
witness; and (2) request a waiver of Petitioner's right to a

jury trial. Respondent's Exhibit 118. The PCR court denied relief on all of Petitioner's claims. The Oregon Court of Appeals affirmed the PCR court's decision without opinion, and the Oregon Supreme Court denied review. *Gonzales v. Taylor,* 294 Or. App. 511, 429 P.3d 446 (2018), *rev. denied,* 364 Or. 294, 434 P.3d 962 (2019).

On May 9, 2019, Petitioner filed this 28 U.S.C. § 2254 habeas corpus case wherein he raises three grounds for relief:

> (1) Trial counsel was ineffective for failing to adequately investigate the case with respect to mental health counselor Thomas Bendt, who could have provided helpful testimony for the defense;
>
> (2) Trial counsel was ineffective for not seeking a waiver of Petitioner's right to a jury trial as Petitioner requested; and
>
> (3) The trial court erred when it denied Petitioner's motion for judgment of acquittal as to the Rape and Sodomy charges.

Respondent asks the Court to deny relief on the Petition because: (1) Petitioner failed to fairly present Grounds Two and Three to Oregon's state courts, leaving them procedurally defaulted; and (2) the PCR court's decision denying relief on Ground One was not objectively unreasonable. Where Petitioner failed to timely file a supporting memorandum in this case, the Court relies upon the arguments he presented to the state courts during his direct review and PCR proceedings.

///

///

///

**DISCUSSION**

I.  **Exhaustion and Procedural Default**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue

to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A.    <u>**Ground Two: Waiver of Jury Trial**</u>

Respondent first argues that Petitioner procedurally defaulted his Ground Two ineffective assistance of counsel claim because, while Petitioner raised the claim in his PCR Petition, he did not pursue it during his PCR appeal. A review of the record confirms that Petitioner presented the Oregon Court of Appeals with a single claim of ineffective assistance of counsel that pertained only to counsel's alleged failure to investigate and present testimony from Mr. Bendt. Respondent's Exhibits 131, 133. Petitioner did not pursue his argument that counsel performed deficiently by filing to request a bench trial. *Id*. He therefore failed to fairly present Ground Two to Oregon's state courts. Because the time for doing so passed long ago, Ground Two is now procedurally defaulted.

B.    <u>**Ground Three: Motion for Judgment of Acquittal**</u>

Respondent also contends that Petitioner failed to fairly present his Ground Three claim of trial court error. She first argues that Petitioner did not take any federal exception to the trial judge's ruling on the motion for judgment of acquittal. In addition, she maintains that Petitioner's Appellant's Brief made only a passing reference to federal law and, instead, relied almost entirely on a state-law analysis. She concludes that on this record, Petitioner failed to provide the Oregon Court of

Appeals with an opportunity to pass upon the merits of his federal due process claim.

As noted in the Background of this Opinion, the Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion. In this regard, it is difficult to determine whether it reached the merits of Petitioner's Ground Three due process claim. When Petitioner moved for a judgment of acquittal, he did not take a specific federal exception to the trial court's denial of his motion. He did, however, satisfy Oregon's contemporaneous objection rule by filing his motion thereby preserving his sufficiency of the evidence objection for appellate review. Indeed, the State "agree[d] that defendant's assignments of error are sufficiently preserved for appellate review." Respondent's Exhibit 113, p. 6. However, it also asserted in a single, conclusory sentence that Petitioner failed to preserve his federal argument: "defendant failed to preserve his argument that the trial court violated his rights under the Fourteenth Amendment to the United States Constitution." *Id*.

Contrary to Respondent's argument that Petitioner made only a passing reference to federal law during his appeal, Petitioner's Appellant's Brief specifically identified a federal basis for his sufficiency of the evidence claim:

> The United States Constitutional so requires a reviewing court to determine whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Jackson*

> *Virginia*. . . . Thus, when a trial court[]
> errs by denying a motion for a judgment of
> acquittal, it violates a defendant's due
> process rights as protected by the 14th
> Amendment to the United States Constitution.
> *Id.*

Respondent's Exhibit 112, p. 15.

It is unclear whether the Oregon Court of Appeals concluded that it could not address this federal claim simply by virtue of Petitioner's failure to advise the trial judge that there was a federal basis underlying his motion for judgment of acquittal. However, where Petitioner potentially presented his claim on appeal in an appropriate procedural context, and where the Oregon Court of Appeals' decision is ambiguous as to whether it addressed the merits of the claim or invoked an independent and adequate state procedural rule to bar its review of the federal due process issue, this Court presumes that the Oregon Court of Appeals decided the claim on its merits. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Harris v. Superior Court*, 500 F.2d 1124, 1128-29 (9th Cir. 1974) (en banc). Because Petitioner raised the same federal due process issue in his Petition for Review to the Oregon Supreme Court, *see* Respondent's Exhibit 114, the Court concludes that he fairly presented Ground Three so as to preserve it for federal habeas corpus review.

## II.  **The Merits**

### A.  **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

B.    **Ground One: Failure to Investigate**

As Ground One, Petitioner alleges that that his trial attorney was ineffective for failing to investigate and later call as a witness mental health counselor Thomas Bendt. He asserts that Bendt was willing to testify favorably for the defense, and that counsel's error resulted in prejudice.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland,* 466 U.S. at 693). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C.

§ 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Thomas Bendt was a mental health counselor for many years in Oregon. As part of his practice, he spent 20 years counseling youths in the custody of the Oregon Youth Authority. It was in this capacity that he met Petitioner at Camp Tillamook.[1] After Petitioner's release by the Oregon Youth Authority, he continued to occasionally visit Bendt. During one of those visits, Petitioner told Bendt of RH's accusations and also represented to Bendt that the sexual encounter had been consensual. Bendt produced a Declaration swearing to this conversation, and also indicated that had trial counsel approached him, he would have shared the contents of that conversation, what he knew about Petitioner, the treatment he had undergone, and Bendt's perception of Petitioner's risk of reoffending. Respondent's Exhibit 123.

The State produced an affidavit from Petitioner's trial attorney wherein counsel explained his rationale for not calling Bendt to testify during the trial:

> In representing criminal defendants, it is my standard presentation to all defendants that there are three decisions that are entirely in the hands of the defendant. The three being whether to enter a guilty plea or a not guilty plea, whether to have a jury trial or a court trial and whether to testify or not testify at trial. Mr. Gonzales, after being so advised, elected to

---

[1] According to Petitioner, Bendt also saw RH in his capacity as a mental health counselor, but Petitioner fails to identify how Bendt could have provided helpful testimony based upon past interactions with the victim.

go to trial with a jury and to not testify.
The primary reason for not testifying was
because Mr. Gonzales had a felony conviction
for failing to register as a sex offender.
Having made that decision, it made no sense
to call Mr. Gonzales's sex offense treatment
provider as a witness. Any after the fact
statement indicating Mr. Gonzales told him
the sexual contact was consensual would not
have come in. Even had Mr. Gonzales elected
to testify, Mr. Bendt's sharing what he knew
about Mr. Gonzales[] would not have been
helpful on the issue of guilt or innocence.

Respondent's Exhibit 127, p. 1.

Based upon this record, the PCR court denied relief on
Petitioner's ineffective assistance of counsel claim:

After consulting with counsel, Petitioner
decided that he would not testify at trial
primarily because of his history as a sex
offender and conviction for failing to
register as a sex offender. Having made that
decision it would not have been reasonable
to call [Bendt] as a witness to testify
about his sex offender treatment program.
The statement Petitioner made to [Bendt]
about having only consensual sex with the
victim would not have been admissible. If it
had been offered, the state could have then
offered the prior criminal history of
Petitioner as impeachment. Petitioner's
claim that he would have testified if
[Bendt] had testified to explain his history
of sex offender treatment is not credible.
Trial counsel made a reasonable strategic
decision not to call [Bendt] as a witness.

Petitioner has not proven prejudice.
Petitioner has not offered evidence that had
[Bendt] testified that would have had a
tendency to affect the outcome of the trial.
There is nothing in [Bendt]'s declaration
that rises to that level. Petitioner claims
that he would have testified if [Bendt] had
been available but he does not offer

>           evidence of what his testimony would have
>           been.

Respondent's Exhibit 130, p. 3.

Bendt had nothing meaningful to offer the defense. Not only did the PCR court determine that Bendt's proposed testimony would be inadmissible, even if the testimony could have been properly admitted, Bendt's repetition of Petitioner's self-serving statement would have held little value. Moreover, Bendt's testimony necessarily would have exposed Petitioner's criminal history as a sex offender. From a strategic perspective, this was not a tradeoff worth considering. For all of these reasons, counsel's performance did not fall below an objective standard of reasonableness, and Petitioner cannot demonstrate that he suffered any prejudice based upon counsel's decision not to call Bendt.[2] Accordingly, the PCR court's decision to deny relief on Petitioner's Ground One claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### C.    Ground Three: Motion for Judgment of Acquittal

Finally, as Ground Three, Petitioner asserts that the trial court violated his right to due process when it denied his motion for judgment of acquittal as to the Sodomy and Rape charges. When reviewing a habeas corpus claim based on insufficient evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the

---

[2] During his PCR appeal, Petitioner asserted that the PCR court employed an incorrect legal standard when assessing prejudice. Respondent's Exhibit 131. This Court has evaluated the PCR court's decision in light of the appropriate standard and determined that habeas relief is not warranted.

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (italics in original). When the record supports conflicting inferences, courts must presume the jury resolved the conflicts in favor of the prosecution. *Id* at 326. Because this issue occurs in the habeas corpus context which carries with it a stringent standard of review, this Court is required to apply a "double dose of deference" to the state-court decision, a level of deference "that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The State charged Petitioner with committing Sodomy in the First Degree and Rape in the First Degree by forcible compulsion. Respondent's Exhibit 102. In Oregon, forcible compulsion is defined as either compelling behavior through the use of physical force or making a "threat, express or implied, that places a person in fear of immediate or future death or physical injury to self[.]" ORS 163.305(2). The physical force must be of a degree to compel the victim to engage in sexual contact against her will, and that the forcible compulsion must be established as to the particular act charged. *State v. Marshall,* 350 Or. 208. 253 P.3d 1017 (2011).

According to Petitioner, the State failed to present any evidence to establish that he subjected RH to forcible compulsion. He maintains that the prosecutor did not present any evidence that he threatened RH, and that RH, herself, testified that she tried to push him away "only a little bit," and "didn't

fight really hard." Trial Transcript, pp. 63. Petitioner reasons that where the record is devoid of any evidence of forcible compulsion, the trial judge should have granted his motion for judgment of acquittal as to the Sodomy and Rape charges.

RH testified with respect to the sodomy that "everything happened really fast" and that he "just did it" and she "didn't really have time to push [his penis] out." Trial Transcript, p. 61. Petitioner forcibly "shoved" his penis in her mouth making her gag, and he did not stop even after she was gagging. *Id* at 67. She tried to push him away and make him stop. *Id* at 63. Taking the evidence in the light most favorable to the State, Petitioner's sodomy of RH involved more force than necessary to accomplish the act of consensual oral sex. At a minimum, it was not objectively unreasonable for the trial judge to deny the motion for judgment of acquittal as to the Sodomy charge.

In the context of the Rape charge, Petitioner argues that RH testified that she cooperated with Petitioner due to a fear instilled by past experiences and her lack of familiarity with Petitioner, not any threat he made. He maintains that although she testified that she tried to prevent Petitioner from removing her clothes, this was not sufficient testimony to establish that Petitioner forcibly compelled her to have intercourse with him.

After forcibly compelling RH to engage in sodomy, Petitioner relied upon his superior physical strength to remove RH's clothes despite her attempts to fight him off. Thereafter, when Petitioner got on top of her, she told him "No." *Id* at 688.

She then "tried to push him away but [she] wasn't trying to fight because [she] didn't want to get hurt more than just emotional hurt. [She] was thinking [she] didn't want to get hurt." *Id* at 69. She was afraid to scream "because screaming sometimes makes people angry and you can get hurt." *Id* at 82. A jury could deduce from this evidence that Petitioner presented at least an implied threat of force that compelled RH to comply with his demands due to a reasonable fear of bodily injury if she did not. For these reasons, the trial court's decision to deny Petitioner's motion for judgment of acquittal was neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

February 23, 2022
DATE

Marco A. Hernandez
United States District Judge

18 – OPINION AND ORDER